IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERRENCE WHITAKER,

                                  Plaintiff,

     v.                                             OPINION AND ORDER

SERGEANT REBECCA EAGLEBURGER,                 20-cv-1041-wmc

                                Defendant.

---

    Plaintiff Terrence Whitaker, a state prisoner representing himself, was granted leave to proceed with a claim that defendant Sergeant Rebecca Eagleburger violated his rights under the Eighth Amendment by failing to provide him with an inhaler promptly despite his allegedly suffering from an asthma attack while incarcerated at the Wisconsin Secure Program Facility ("WSPF"). (Dkt. #11.) Defendant Eagleburger has filed a motion for summary judgment, arguing that plaintiff's claim lacks merit and that she is further entitled to qualified immunity. (Dkt. #21.) Even considering all of the pleadings and exhibits in the light most favorable to plaintiff, defendant's motion for summary judgment must be granted for the reasons explained below.

UNDISPUTED FACTS[1]

    Whitaker is presently incarcerated at Waupun Correctional Institution. At all times relevant to his complaint, however, he was confined at WSPF, where Eagleburger was employed by the Wisconsin Department of Corrections ("DOC") as a sergeant.

---

[1] Unless otherwise indicated, the following undisputed facts set forth in this section are taken from

The incident that forms the basis of Whitaker's complaint occurred on August 19, 2020, when Whitaker was housed in Alpha Unit, a Restricted Housing Unit ("RHU"), and Sergeant Eagleburger was working in the sergeant's cage for that Unit. As a sergeant, Eagleburger's responsibilities included, but were not limited to, supporting unit staff, maintaining institutional security, maintaining the safety of inmates on her unit, and performing general tasks within the various housing units. While working in the sergeant's cage, which is the area where the sergeant is stationed throughout a shift, Eagleburger was also responsible for answering calls from inmates making requests through the cell intercom system.

At WSPF, every inmate has an intercom button in their cell that can be used to place emergency requests. In particular, during their first week at the institution, inmates are instructed that the cell intercom button is to be used only for emergency reasons or to request medications on an "as-needed" or Pro Re Nata ("PRN") basis. These medications are also referred to as "Keep on Person" or "KOP medications" that inmates placed in a non-RHU may keep in their cell, instead of waiting for a correctional officer to distribute it from a cart during "medication pass," which occurs four times per day.

Even so, it is not uncommon for inmates to use the cell intercom button for non-emergency requests. Pushing the intercom button sends a signal to the sergeant's cage and indicates that an inmate wants to talk. Staff then press a button in the sergeant's cage that "answers" the call, so staff can hear the inmate. Staff may also use a separate button to

---

proposed findings of fact submitted in compliance with the court's procedures on summary judgment as provided to the parties along with the pretrial conference order in this case.

2

talk back to the inmate. The system will also allow for multiple calls, but it may take a minute before all calls are answered if many calls come in at once.

When calls come in on the intercom that may require action, sergeants typically delegate checking on inmates to other correctional officers, so that sergeants can remain in the cage and answer other calls. Delegated correctional officers are then expected to report back any issues with an inmate to the sergeant on duty. In addition, correctional officers are to check on the inmates at least once per hour during rounds to ensure their health and safety. In fact, correctional officers typically walk the hallways more often than once per hour while escorting inmates to the library, showers, or recreation.

At 2:30 p.m. on August 19, 2020, Whitaker placed a call through the intercom system in his cell. After Sergeant Eagleburger responded by stating, "what's your emergency," Whitaker claims to have said he needed his inhaler because he was having difficulty breathing. Consistent with Whitaker being known for not talking loud enough, especially with female officers, Eagleburger claims that she could not hear what Whitaker was saying and told him to either get closer to the intercom or speak up. Instead, Whitaker, who claims that he was seated on the floor in distress, only managed to press the intercom two more times.

All three of these calls were made in quick succession within minutes of each other, and after Whitaker pressed the intercom the third time without Sergeant Eagleburger being able to hear him, she had a correctional officer go to Whitaker's cell to see what he wanted. The officer who was dispatched to Whitaker's cell returned to the sergeant's cage and informed Eagleburger that Whitaker wanted his inhaler.

3

However, inmates assigned to an RHU are generally not allowed to keep inhalers in their cells because they can make "shanks" or sharp metal objects out of the metal parts in the inhaler. Instead, as already explained, inmates in RHU typically have a "KOP medication restriction," meaning that their medications are dispensed from a cart during the medication passes four times per day. In addition, medications can also be kept in the sergeant's cage for easier access. Unfortunately, Whitaker's name was not on the list of inmates kept in the sergeant's cage with a KOP medication restriction for an inhaler. Likewise, there was no KOP medication restriction for an inhaler listed in Whitaker's "Special Handling Summary" in the Wisconsin Integrated Corrections System ("WICS") database used by DOC to manage information about inmates.

Rather, Whitaker's *medical* records show that he had a prescription for an Albuterol inhaler, which is typically prescribed for patients with mild to acute asthma. As a sergeant, however, Eagleburger could not access an inmate's medical file. Moreover, when the correctional officer who was dispatched to Whitaker's cell and returned to the sergeant's cage to relay Whitaker's request for an inhaler, the officer neither seemed alarmed, nor did he indicate that Whitaker's condition was serious. Sergeant Eagleburger then asked where Whitaker's inhaler could be located and was told that some were kept in the sergeant's cage. After looking around the sergeant's cage and not finding an inhaler for Whitaker, Sergeant Eagleburger then asked a correctional officer to check the medication cart to confirm that Whitaker's inhaler was available to be dispensed during the next medication pass. That officer reported to Eagleburger that he could not locate any inhaler on his medication cart.

4

At this point, Eagleburger and the officer asked the Health Services Unit ("HSU") to bring an inhaler to Whitaker *or* to the officer dispensing medication. Because the time was approximately 2:30 p.m. and the next medication pass was scheduled for 3:00 p.m., Eagleburger further expected that a nurse would bring Whitaker's inhaler during that distribution, if not sooner. According to the logbook, however, the 3:00 p.m. medication pass was delayed on August 19 and did not occur until 3:15 p.m., while dinner meals were served starting at 3:20 p.m. Moreover, Registered Nurse Wehrle made rounds at 3:05 p.m., including conducting wellness checks in the RHU where Whitaker was assigned. She remained on that unit until 3:45 p.m. but does not recall if she saw Whitaker. Further, Registered Nurse Michelle Capello saw Whitaker at 3:27 p.m. on August 19, about an hour after he first pressed the intercom button in his cell, and documented that Whitaker was responsive, had no sign of injury or illness, and there were no concerns.

Finally, correctional officers conducting rounds in the RHU can see the inmates as they pass by their cells. If Whitaker was observed to be struggling, a correctional officer would have made that observation, requested assistance, and logged that information into the Unit logbook. However, no other correctional officer conducting rounds in the RHU on August 19 reported Whitaker was having an asthma attack or in distress. Similarly, if he had experienced an asthma attack that day, a nurse would have evaluated him, yet the logbook for that day contains no entry showing that Whitaker suffered an asthma attack. Nor are there any medical records showing that Whitaker had a history of acute asthma or was harmed by any delay in receiving an inhaler.

OPINION

In his suit under 42 U.S.C. § 1983, plaintiff alleges that defendant denied him prompt access to an inhaler after experiencing an asthma attack on August 19, 2020. Defendant has moved for summary judgment on plaintiff's claim, arguing that: (1) plaintiff was observed to be fine that day; and (2) the undisputed evidence shows he was not on the list of RHU inmates with a KOP medication restriction for an inhaler. Defendant argues further that there is no evidence she was aware of, but deliberately ignored, a substantial risk to plaintiff's health. Defendant argues, therefore, that plaintiff's claims fail on the merits.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive summary judgment, however, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to [reach] a verdict in [his] favor." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (citation and internal quotation marks omitted).

Although *pro se* litigants are entitled to liberal construction of their pleadings, they, too, have the burden to come forward in response to a motion for summary judgment with evidence that demonstrates a genuine issue of material fact. *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) ("[A plaintiff's] pro se status doesn't alleviate his burden on

summary judgment.") (citation omitted). Further, while the court views the record "in the light most favorable to the nonmovant and constru[es] all reasonable inferences from the evidence in his favor," *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023), a nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or upon "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).

## I.   Eighth Amendment Claim

Plaintiff claims that defendant is liable for violating his rights under the Eighth Amendment, which prohibits "cruel and unusual punishments" caused by deliberate indifference to conditions resulting in the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Although the Constitution does not mandate comfortable prisons, officials have a duty under the Eighth Amendment to provide "humane conditions of confinement" by ensuring that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Officials must further "take reasonable measures to guarantee the safety of the inmates" in their custody. *Id*. When an Eighth Amendment claim is premised upon a failure to prevent harm, a plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm" *and* that prison officials were deliberately indifferent to that risk. *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 834).

Deliberate indifference depends on the defendant's subjective state of mind. *McDaniel v. Syed*, 115 F.4th 805, 832 (7th Cir. 2024). To demonstrate deliberate indifference, therefore, a prisoner must show that the defendant "'*actually* knew of and disregarded a substantial risk of harm.'" *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (emphasis in original). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. For these reasons, proof of deliberate indifference is a "'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)). "Negligence or even objective recklessness -- the 'fail[ure] to act in the face of an unjustifiably high risk that is so obvious that it *should* be known' -- is not enough to satisfy this standard. *McDaniel*, 115 F.4th at 832 (quoting *Petties*, 836 F.3d at 728 (emphasis in original). Instead, evidence of "callous disregard" for inmate wellbeing is required to make out an Eighth Amendment claim. *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

Here, the evidence shows that plaintiff made three calls on the intercom to the sergeant's cage in quick succession at 2:30 p.m. on August 19, 2020. (Dkt. #43, at ¶¶ 12, 16-17, 80.) Even though defendant reportedly could not hear what plaintiff was saying due to his faint voice, it is undisputed that she dispatched a correctional officer to plaintiff's cell after receiving the third call. (*Id*. at ¶ 17.) Further, that officer returned to the sergeant's cage and reported, without raising any alarm, that plaintiff wanted his inhaler.

8

(*Id*. at ¶¶ 18-19.)  Again, defendant did not ignore plaintiff, but actively looked for an inhaler in the sergeant's cage, where KOP medications belonging to RHU inmates were kept.  (*Id*. at ¶¶ 20-21.)  When defendant could find no inhaler in the sergeant's cage, she next asked another officer to check with the medication cart to confirm that an inhaler would be available to plaintiff at the upcoming medication pass scheduled for 3:00 p.m., but the officer could not locate one.  (*Id*. at ¶¶ 24-25).  Finally, defendant asked someone in the HSU to bring an inhaler to plaintiff.  (*Id*. at ¶ 26.)

Because a medication pass was scheduled for 3:00 p.m., defendant had reason to believe that a nurse would bring plaintiff's inhaler at that time or sooner.  (*Id*. at ¶ 28.)  Moreover, although medication pass did not occur until 3:15 p.m., plaintiff was examined by a nurse shortly thereafter at 3:27 p.m. and there were no signs of illness or injury, nor did plaintiff report any concerns.  (Van Ruden Decl. Ex. 1004 (dkt. #25-2) at 1.)

In fairness, unbeknownst to defendant, it turns out that plaintiff's medical records show he had a prescription for an Albuterol inhaler, which was prescribed as needed for "shortness of breath or wheezing," but even then *not* due to a history of acute asthma.  (Ex. 1003, Von Ruden Decl. (dkt. #25-1) at 1; Wehrle Decl. (dkt. #26) ¶¶ 10, 12.)  As a result, plaintiff has not presented *any* medical records showing a diagnosis of acute asthma, much less that his condition on August 19, 2020, was objectively serious.  Further, to the extent that plaintiff claims his access to care was delayed, the Seventh Circuit has "required that the plaintiff present 'verifying medical evidence' that the delay, and not the underlying condition, caused some harm."  *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)); *Petties*, 836

9

F.3d at 730-31 (a delay in treatment only constitutes deliberate indifference where a plaintiff presents independent evidence that the delay exacerbated an injury).

At summary judgment, therefore, plaintiff has provided no evidence in support of his claim that he suffered an asthma attack, nor that it was aggravated by a lack of prompt access to an inhaler. Moreover, plaintiff does not dispute that he was not on the list of inmates with a KOP medication restriction in the Alpha Unit sergeant's cage on August 19. (Dkt. #43, ¶¶ 52, 54.) Plaintiff also does not dispute that defendant did not have access to his medical file, and there was no information documenting his need for an inhaler in plaintiff's Special Handling Summary in the WICS database. (*Id*. at ¶¶ 55, 60.)

Because plaintiff has failed to produce evidence from which a reasonable jury could find that defendant was aware he even had asthma, had a prescription for an Albuterol inhaler, or was in any distress that day, there is no basis for a jury to find or reasonably infer that defendant is liable for deliberately disregarding a risk of serious harm to plaintiff. *See Farmer*, 511 U.S. at 834 (plaintiff must show that the defendant subjectively knew of a "substantial risk of serious harm" and deliberately disregarded that risk). Accordingly, defendant is entitled to summary judgment on his Eighth Amendment claim.

## II.   Qualified Immunity

Defendant has asserted an alternative defense of qualified immunity, which protects government officials from liability for damages unless they "violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the defense is raised, a plaintiff bears the burden of defeating it by showing that: (1) the defendants violated a constitutional right; and (2) the constitutional right was clearly

established at the time of the violation. *Garcia v. Posewitz*, 79 F.4th 874, 778 (7th Cir. 2023). "If either inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Pierner-Lytge v. Hobbs*, 60 F.4th 1039, 1044 (7th Cir. 2023) (citation and internal quotation marks omitted). Since plaintiff has not shown that defendant Eagleburger violated his constitutional rights by deliberately ignoring an objectively serious threat to his health, she is also entitled to qualified immunity.

## ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendant Rebecca Eagleburger (dkt. #21) is GRANTED.

2. The clerk of court is directed to enter judgment for the defendant and close this case.

Entered this 1st of April, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge